UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMIE FARRAR, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 4:20-11750-TSH |
| v. | ) ) ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION TO REVERSE THE COMMISSIONER'S DECISION AND THE COMMISSIONER'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (Docket Nos. 18 & 19)**

**March 31, 2021**

**HILLMAN, D.J.**

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying the application of Jamie Farrar (the "Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] The Plaintiff filed a motion for an order reversing the decision. (Docket No. 18). The Commissioner filed a cross-motion seeking affirmance. (Docket No. 19). Because the medical opinions on which the ALJ relied were based on a significantly incomplete record, the Court vacates the decision and remands the case for further consideration. The Plaintiff's motion is **_granted_**. The Commissioner's motion is **_denied_**.

**Background**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, is substituted as the defendant in this matter.

The parties are familiar with the factual history of this case and the applicable five-step sequential analysis. Accordingly, the Court will recite the procedural and substantive history of the case only as it relates to the Plaintiff's arguments.

The Plaintiff filed applications for DIB and SSI on April 12, 2017, alleging a disability due to heart disease, chest pain, back pain, and peripheral neuropathy. (AR 251). The Social Security Administration denied his applications, initially on September 13, 2017, and upon reconsideration on February 22, 2018. (AR 147, 151, 157, 160).

At the initial determination stage, a non-examining state agency medical consultant, Dr. Ludmila Perel, assessed the Plaintiff's residual functional capacity ("RFC"). (AR 97-99). Dr. Perel opined that the Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for a total of four hours, and sit (with normal breaks) for a total of six hours in an eight-hour workday. (AR 97-98). Dr. Perel explained that the Plaintiff has normal motor strength and tone, no tenderness, normal gait, and no focal neuro deficits. (AR 98). She also noted, *inter alia*, that the Plaintiff alleges back pain, neuropathy, and heart disease; has had multiple surgeries and five stents implanted; has stable angina; has chronic back pain; and walks with a cane. (AR 98).

At the reconsideration stage, a different non-examining state agency medical consultant, Dr. Ilonna Rimm, affirmed Dr. Perel's RFC assessment. (AR 124-126). Dr. Rimm explained that although the Plaintiff has many obesity-related issues, sleep apnea, and heart disease (including an additional stent placed in June of 2017), his "exam is unremarkable," and he can cook, clean, and shop. (AR 126). Dr. Rimm also found it noteworthy that the Plaintiff reports that he uses a cane, but that his physicians report that he exhibits a normal gait without a cane. (AR 126).

The Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 163). In a pre-hearing memorandum, the Plaintiff clarified that his alleged disability onset date is March 31, 2016. (AR 318). The hearing was held on November 19, 2019. (AR 36).

The Plaintiff has a ninth-grade education and was in his mid-forties at the time of the alleged disability onset date. (AR 22, 252). At the hearing, the Plaintiff testified that he had previously worked as a cook, a maintenance worker, a machinist, and a nighttime security guard. (AR 43-47). The Plaintiff testified that he stopped working in 2013. (AR 43). He testified that he is "slow" at taking care of himself; cannot do household chores without falling; cannot stand for more than five minutes at a time; cannot walk more than twenty-five or thirty feet without a cane; cannot walk across uneven surfaces; cannot lift and carry more than about seven pounds; has difficulty bending and kneeling; constantly drops things due to difficulty with his hands; has difficulty going up and down stairs; and has blurred vision, dizziness, and fatigue due to medication he takes. (AR 53-57). The Plaintiff also testified that he cannot sit for six hours a day. (AR 54-55, 58).[2]

A vocational expert ("VE") also testified. The ALJ asked the VE about a hypothetical person with the Plaintiff's age, education, and work experience, with limitations in line with Dr. Perel's RFC assessment. The VE testified that a person with such limitations could not perform any of the Plaintiff's past jobs, but could perform other jobs in the national economy, such as that of a ticket seller taker, a toll collector, or a school bus monitor. (AR 66).[3]

---

[2] In 2017, the Plaintiff self-reported that, even though he is in pain, he can prepare simple meals, do laundry, and go shopping. (AR 278-285). Notes from the Plaintiff's therapist in 2019 indicate that the Plaintiff frequently went fishing and engaged in other outdoor activities, such as barbecuing. (AR 695-759).

[3] When asked about limitations beyond Dr. Perel's assessment -- for example, that the hypothetical person had to be off task up to 15% of the day or had to miss work two or more days

On January 15, 2020, the ALJ issued his decision. (AR 12). Undertaking the familiar five-step sequential analysis, the ALJ concluded that the Plaintiff was not disabled from his alleged onset date through the date of the decision. (AR 16). At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since before the alleged onset date. (AR 17). At step two, the ALJ found that the Plaintiff had the following severe impairments: coronary artery disease status-post stents, peripheral neuropathy, obesity, degenerative disc disease, sleep apnea, and left shoulder dysfunction. (AR 18). The ALJ further found that the Plaintiff had the following non-severe impairments: hip issues, prior hernia surgeries, diabetes, chronic pain, alcohol dependence (in sustained remission), and depression. (AR 18-19).[4] At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or were medically equivalent to any of the impairments listed in the Social Security regulations. (AR 19).

The ALJ then found that the plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the limitations largely as described by Dr. Perel.[5] (AR 22). The ALJ reasoned that while the Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

---

each month -- the VE testified that a person with such limitations could not perform any job. (AR 67).

[4] As to chronic pain, the ALJ explained that even though treatment notes indicate that the Plaintiff has symptoms "consistent with fibromyalgia," and even though the Plaintiff has a history of treatment for widespread pain, "there does not appear to be clinical findings in the record to support [a fibromyalgia diagnosis] and [the Plaintiff's] pain is generally account[ed] for by [his] other physical impairments." (AR 18).

[5] As the Commissioner points out, there is a small discrepancy between the ALJ's RFC finding and Dr. Perel's assessment. The ALJ found that the Plaintiff can have no more than occasional exposure to unprotected heights and moving mechanical parts. (AR 22). Dr. Perel opined that the Plaintiff should avoid even moderate exposure to such hazards. (AR 99).

4

evidence in the record." (AR 22-23). The ALJ acknowledged that the Plaintiff testified to more extreme limitations but pointed to the Plaintiff's medical examinations from 2016 through 2019 in which the Plaintiff exhibited normal heart rate and rhythm, a normal gait and station,[6] normal motor strength and tone, generally normal movement in his extremities,[7] normal breath sounds, grossly intact sensation, and the ability to ambulate normally or with a cane.[8] (AR 23-25). The ALJ further pointed to reports that the Plaintiff was spending time on activities outside of the home, such as fishing, barbequing, and working on cars.[9] (AR 25-26).

The ALJ found "highly persuasive" the RFC opinions of Dr. Perel and Dr. Rimm, noting that their opinions were "generally consistent with the medical record and the claimant's reported activities and hobbies." (AR 27). The ALJ did not expressly rely on or credit any other medical opinions on the Plaintiff's physical impairments.

Finally, accepting the testimony of the VE, the ALJ found, at step four, that the Plaintiff was unable to perform any past relevant work, and, at step five, that there were jobs in the national economy that the Plaintiff could perform. (AR 27-29). Accordingly, the ALJ found that the Plaintiff was not disabled. (AR 29). The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. (AR 1).

---

[6] Among the four records cited by the ALJ from 2019, only one of the records describes the Plaintiff's gait as normal; it also notes that the Plaintiff "uses cane for balance." (AR 657, 696, 801, 866). One of the other three records describes the Plaintiff's gait as "antalgic." (AR 866).

[7] One record from 2019 indicates that the Plaintiff had limited lumbar range of motion. (AR 866).

[8] Beginning in April 2019, examination records indicate that the Plaintiff ambulated with a cane. (AR 656, 696, 801, 866).

[9] Contrary to the Plaintiff's contention, the ALJ did not mischaracterize the record when commenting on the Plaintiff's daily activities. (AR 695-759). It does not matter that the Plaintiff engaged in some of these activities at his therapist's recommendation. (AR 718, 743).

5

**Standard of Review**

The Court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," *id.*, because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *see also Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). "Judicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

**Discussion**

The Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). An ALJ's RFC determination must be supported by a "medical opinion" to be supported by substantial evidence. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 430 (1st Cir.1991). A "medical opinion" is a statement from a medical source about what a person can do, despite the person's impairments. *See* 20 C.F.R. § 404.1513(a)(2). A medical opinion cannot serve as substantial evidence if it is based on a significantly incomplete record. *See Alcantara v. Astrue*, 257 Fed. Appx. 333, 335 (1st Cir. 2007) (unpublished); *Valle v. Berryhill*, 444 F. Supp. 3d 299, 313 (D. Mass. 2020); *Arrington v. Colvin*, 216 F. Supp. 3d 217, 239 (D. Mass. 2016).

The Plaintiff argues that the medical opinions on which the ALJ relied were based on an incomplete record. (Docket No. 18 at 10, 12). The ALJ relied on medical opinions from two non-examining medical consultants (Dr. Perel and Dr. Rimm) who assessed the Plaintiff's RFC in late 2017 and early 2018. The ALJ rendered his decision in January 2020.

In August 2017, Dr. Perel explained her RFC opinion by noting, *inter alia*, that the Plaintiff's "exam" exhibited "normal motor strength and tone, no tenderness, normal gait, [and] no focal neuro deficits." (AR 98). She also noted that the Plaintiff walks with a cane. (AR 98). In February 2018, Dr. Rimm affirmed Dr. Perel's RFC opinion by noting, *inter alia*, that the plaintiff's "exam" was "unremarkable," and that while the Plaintiff reports that he uses a cane, his physicians report that he has a normal gait without a cane. (AR 126).

The record indicates that beginning in May 2018, the Plaintiff started exhibiting tenderness in his spine. (AR 866, 871, 880, 885, 890, 898, 903, 908, 915). In October 2019, moreover, a rheumatologist, Dr. Eugene Bacorro, examined the Plaintiff and assessed him to have "chronic, widespread pain, diffuse tenderness, and associated symptoms consistent with fibromyalgia."[10] (AR 792). This evidence directly contradicts Dr. Perel's assessment of the incomplete record -- that the Plaintiff had "no tenderness." This evidence also suggests a change since Dr. Rimm's assessment -- that the Plaintiff's examination was "unremarkable." Symptoms consistent with fibromyalgia, moreover, may mark a meaningful change in a claimant's condition. *See Johnson v. Astrue*, 591 F.3d 409, 412-13 (1st Cir. 2009) (noting the lack of objective evidence in

---

[10] Although Dr. Bacorro assessed the Plaintiff's symptoms as being consistent with fibromyalgia, the record does not suggest, as the Plaintiff contends, that Dr. Bacorro *diagnosed* the Plaintiff with fibromyalgia. Similarly, the record does not suggest that the Plaintiff's pain management specialists at Nashoba Valley Medical Center ("NVMC") *confirmed* Dr. Bacorro's diagnosis. The NVMC records state, "per pt he was dx with fibromyalgia," and "Dx by rheum Dr. Bacorro 10.4.19." (AR 866-67, 873).

fibromyalgia cases); *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (describing that fibromyalgia patients have normal muscle strength, sensory functions, and reflexes).

Furthermore, while early examinations of the Plaintiff indicated that he ambulated normally and had a normal gait, as Dr. Rimm noted, examinations in 2019 began indicating that the Plaintiff ambulated with a cane, and at least one examination indicated that the Plaintiff had an antalgic gait. (AR 801, 808, 815, 866). This shift evinces a limitation beyond what Dr. Rimm may have considered, *see Carvalho v. Kijakazi*, 2021 WL 4488941, at *10 (D. Mass. Sept. 30, 2021); *D.A. v. Colvin*, 2013 WL 5513952, at *8 (D. Mass. Sept. 30, 2013), and directly contradicts the discrepancy she found noteworthy.

Finally, in October 2019, the Plaintiff underwent additional heart surgery. While both consultants noted that the Plaintiff had heart disease, and Dr. Rimm noted that the Plaintiff had had a recent stent implant, evidence of additional heart surgery is further indication that the Plaintiff's condition deteriorated after the consultants rendered their opinions.[11] *See Nagy v. Saul*, 2020 WL 3118569, at *5 (W.D.N.Y. Jun. 12, 2020).

Contrary to the Commissioner's contention, it is not enough that the ALJ considered the more recent evidence independently. (Docket No. 20 at 11). *See O'Brien v. Saul*, 2020 WL 1169459, at *6 (D. Mass. Mar. 11, 2020). The more recent evidence is inconsistent with the evidence on which the consultants relied. And, as noted, an ALJ's RFC determination must be supported by a medical opinion, and a medical opinion based on a significantly incomplete record is not substantial evidence. *See Berrios Lopez*, 951 F.2d at 430; *Valle*, 444 F. Supp. at 313; *see*

---

[11] The Court rejects the Plaintiff's argument that the ALJ did not otherwise adequately consider the Plaintiff's heart disease. The Plaintiff's 2019 heart surgery does not provide an independent basis for remand; rather, it contributes to the Court's finding that the medical consultants' opinions were based on an incomplete record.

*also Burge v. Colvin*, 2016 WL 8138980, at *9 (D.R.I. Dec. 7, 2016) ("It is well settled that an ALJ cannot base the RFC determination on his own independent interpretation of raw medical data beyond the ken of a lay person."). Because the consultants did not consider evidence that the Plaintiff had tenderness in his spine, diffuse tenderness, and symptoms consistent with fibromyalgia, and because the consultants' opinions are the only ones the ALJ credited in determining the Plaintiff's RFC, the ALJ's decision is not supported by substantial evidence. Accordingly, remand is appropriate. *See Reed v. Saul*, 2020 WL 4938341, at *6-7 (D. Mass. Aug. 21, 2020) (finding remand appropriate where new evidence "potentially" shows greater or additional limitations); *see also Laboy v. Colvin*, 2017 WL 3668413, at *16-17 (D. Mass. Aug. 24, 2017) (remanding case where non-examining consultants only had access to a partial record and RFC failed to account for aspects of the claimant's medical history).

## Conclusion

For the reasons set forth above, the Plaintiff's motion is ***granted***, and the Commissioner's motion is ***denied***. The Court vacates the ALJ's decision and remands the case to the agency for further consideration.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
